101 P.3d 80 (2004)
153 Wash.2d 126
STATE of Washington, Respondent,
v.
Steven I. REICHENBACH, Petitioner.
In the Matter of the Personal Restraint Petition of Steven Reichenbach, Petitioner.
No. 74331-2.
Supreme Court of Washington, En Banc.
November 24, 2004.
*83 R.A. Lewis, Camas, David Schultz, Kirkland, for Petitioner.
Peter S. Banks, Stevenson, for Respondent.
MADSEN, J.
Steven Reichenbach challenges the Court of Appeals decision affirming his conviction on one count of possession of methamphetamine. Reichenbach contends that he received ineffective assistance of counsel when counsel failed to move to suppress evidence of the drugs. We conclude that police officers illegally seized the baggie of methamphetamine at issue and that counsel rendered ineffective assistance when he failed to move for suppression of the methamphetamine. We reverse the Court of Appeals.

FACTS
In early February 2001, Monte Buettner, Skamania County Sheriff's Detective, received a call from Richard Seaman. Seaman indicated to Buettner that his landlord, Reichenbach, was forcing him to drive to Vancouver so that Reichenbach could purchase narcotics. Seaman asked Buettner for advice and Buettner instructed Seaman to contact him when Seaman was planning another trip to Vancouver with Reichenbach. Thereafter, Seaman contacted Buettner several times, informing Buettner that he was driving Reichenbach to Vancouver and suggesting that Buettner stop and search Seaman's car during these trips. Buettner took no action.
On March 1, 2001, Seaman again called Buettner, informing him that he would be driving Reichenbach to Vancouver to purchase methamphetamine. Based on his contact with Seaman, Buettner obtained a search warrant for Seaman's car and Reichenbach's person.
Seaman called Buettner from Vancouver twice, indicating that Reichenbach had been unable to purchase methamphetamine and that he was not sure whether Reichenbach would be able to do so. Buettner did not inform the judge who issued the warrant of Seaman's calls.
That afternoon, Buettner staged an accident on Highway 14 to block Seaman's car. Buettner did not inform Seaman of his plan. According to Seaman, Reichenbach was trying to tear a baggie of methamphetamine in half as Seaman's car arrived at the accident scene. Police officers approached the vehicle and ordered Reichenbach to raise his hands at gunpoint. Reichenbach dropped his left hand twice around his hip area before complying with the order. One of the police officers removed Reichenbach from the car and searched it. Officers discovered the baggie of methamphetamine on the floor near the left side of the passenger seat where Reichenbach had been sitting.
Reichenbach was charged by information with possession of methamphetamine. Although Reichenbach was represented, his attorney did not challenge seizure of the baggie. Reichenbach was convicted and sentenced. He then appealed. While his direct appeal was pending, Reichenbach filed a personal restraint petition, asserting that he received ineffective assistance of counsel based on counsel's failure to move for suppression of the drugs found in the search of Seaman's vehicle. The direct appeal and personal restraint petition were *84 consolidated and the Court of Appeals ordered a reference hearing on whether the search warrant was valid at the time of its execution and whether the seizure of the drugs could be justified on any other ground. The trial court determined that the search warrant was invalid at the time of its execution, concluding that probable cause was lost when Seaman advised Buettner that he was not sure whether Reichenbach could obtain methamphetamine. Nevertheless, the trial court ruled that the seizure was justified based on Seaman's consent to search.
The Court of Appeals affirmed. State v. Reichenbach, noted at 117 Wash.App. 1054, 2003 WL 21529017, review granted, 151 Wash.2d 1001, 87 P.3d 1185 (2004). The court rejected Reichenbach's claim of ineffective assistance of counsel raised in his personal restraint petition, holding that Reichenbach was not prejudiced by counsel's failure to move to suppress the baggie of methamphetamine because the seizure was justified by Seaman's consent. The court also rejected the remaining claims raised in the direct appeal. Reichenbach filed this petition for review.

ANALYSIS
The only issue before this court is whether Reichenbach received ineffective assistance of counsel when his attorney failed to move to suppress the methamphetamine that police found in the search of Seaman's vehicle. In order to show that he received ineffective assistance of counsel, Reichenbach must show (1) that defense counsel's conduct was deficient, i.e., that it fell below an objective standard of reasonableness; and (2) that the deficient performance resulted in prejudice, i.e., that there is a reasonable possibility that, but for the deficient conduct, the outcome of the proceeding would have differed. State v. Thomas, 109 Wash.2d 222, 225-26, 743 P.2d 816 (1987) (adopting test from Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).
There is a strong presumption that defense counsel's conduct is not deficient. State v. McFarland, 127 Wash.2d 322, 335, 899 P.2d 1251 (1995). However, there is a sufficient basis to rebut such a presumption where there is no conceivable legitimate tactic explaining counsel's performance. State v. Aho, 137 Wash.2d 736, 745-46, 975 P.2d 512 (1999). Here, the baggie of methamphetamine was the most important evidence the State offered yet counsel did not challenge its admissibility despite serious questions about the validity of the warrant upon which the search was based. As the Court of Appeals held, the warrant was invalid at the time of its execution because information from Seaman, acquired after the warrant was issued but before its execution, negated probable cause. This argument was available to counsel and his failure to challenge the search based upon an invalid warrant cannot be explained as a legitimate tactic. Thus, as the trial court found and the Court of Appeals concluded, counsel's conduct was deficient.
Next, we consider whether counsel's deficient performance resulted in prejudice. As a general rule, warrantless searches and seizures are per se unreasonable. State v. Williams, 102 Wash.2d 733, 736, 689 P.2d 1065 (1984). However, there are a few "jealously and carefully drawn exceptions" to the warrant requirement, including consent. State v. Hendrickson, 129 Wash.2d 61, 70-71, 917 P.2d 563 (1996) (quoting State v. Bradley, 105 Wash.2d 898, 902, 719 P.2d 546 (1986) (citing Coolidge v. New Hampshire, 403 U.S. 443, 454, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971))). The State must meet three requirements in order to show a valid consensual search: (1) the consent must be voluntary, (2) the person granting consent must have authority to consent, and (3) the search must not exceed the scope of the consent. State v. Thompson, 151 Wash.2d 793, 803, 92 P.3d 228 (2004); State v. Nedergard, 51 Wash.App. 304, 308, 753 P.2d 526 (1988).[1] Here, Seaman had authority to consent *85 because the car belonged to him. Thus, we examine only whether the first and third requirements were satisfied.
Whether consent is voluntary is a question of fact (Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)) and depends upon the totality of the circumstances, including (1) whether Miranda warnings were given prior to obtaining consent, (2) the degree of education and intelligence of the consenting person, and (3) whether the consenting person was advised of his right not to consent. State v. Bustamante-Davila, 138 Wash.2d 964, 981-82, 983 P.2d 590 (1999); State v. Shoemaker, 85 Wash.2d 207, 212, 533 P.2d 123 (1975). While knowledge of the right to refuse consent is relevant, it is not a prerequisite to finding voluntary consent, however. State v. O'Neill, 148 Wash.2d 564, 588, 62 P.3d 489 (2003); State v. Nelson, 47 Wash.App. 157, 163, 734 P.2d 516 (1987). In addition, the court may weigh any express or implied claims of police authority to search, previous illegal actions of the police, the defendant's cooperation, and police deception as to identity or purpose. State v. Flowers, 57 Wash.App. 636, 645, 789 P.2d 333 (1990).
Here, Seaman repeatedly suggested to Buettner that he stop and search his car during his trips with Reichenbach to Vancouver. Buettner instructed Seaman to advise him when a trip to Vancouver was planned, so that Buettner could stop and search Seaman's car. On March 1, 2001, Seaman did contact Buettner, giving Buettner another opportunity to stop Seaman's car. Although Buettner did not inform Seaman of his plan to stop his car, the record shows that Seaman was at no point under pressure to consent to the search of his car. Under these circumstances, Seaman consented to Buettner's search. He knew that he was free to refuse consent by opting not to call Buettner. While Seaman's educational background is unclear, his decision to report his dealings with Reichenbach demonstrates intelligence. Moreover, Seaman was cooperating with the police. When Seaman called Buettner on March 1, 2001, Buettner did not attempt to coerce or deceive Seaman. Finally, Seaman testified during the reference hearing that he had consented to the search of his vehicle. Based on the totality of circumstances, we conclude that Seaman voluntarily consented to the search of his car.
The next question is whether the search of Seaman's vehicle exceeded the scope of Seaman's consent. A consensual search may go no further than the limits for which the consent was given. Bustamante-Davila, 138 Wash.2d at 981, 983 P.2d 590; State v. Jensen, 44 Wash.App. 485, 491, 723 P.2d 443 (1986). Any express or implied limitations or qualifications may reduce the scope of consent in duration, area, or intensity. State v. Cotten, 75 Wash.App. 669, 679, 879 P.2d 971 (1994). Relying on Cotten, Reichenbach argues that Seaman limited the scope of his consent when he told Buettner that he was not sure whether Reichenbach could find methamphetamine on March 1, 2001. In Cotten, FBI agents requested the defendant's mother's consent to search her residence for evidence connected to a bombing, telling her that they were only looking for materials that could be used to make bombs. Cotten, 75 Wash.App. at 675-76, 879 P.2d 971. While searching the residence, the agents found and seized a shotgun connected to a murder rather than the bombing. Id. at 676, 879 P.2d 971. The defendant moved to suppress the shotgun. Id. The Court of Appeals concluded that the scope of consent was *86 limited to the items connected to the bombing and held that the mother's consent to search did not encompass the shotgun. Id. at 680, 879 P.2d 971.
In contrast to the circumstances in Cotten, Seaman's statement regarding the presence of drugs does not suggest that Seaman intended to limit the scope of his consent to search. At most, Seaman's statement was intended to keep the police informed about whether a search would prove fruitful. We agree with the Court of Appeals that Seaman consented to the police search of his entire vehicle, and therefore the search did not exceed the scope of the consent.
Reichenbach argues though, that even if Seaman consented, the seizure of the baggie of methamphetamine was unlawful based upon the unlawful seizure of his person. Specifically, he contends that he involuntarily abandoned the drugs in response to the unlawful seizure of his person, rendering the police seizure of the drugs unlawful. The State contends that Reichenbach has failed to meet his burden of establishing involuntary abandonment.
In State v. Parker, 139 Wash.2d 486, 497, 987 P.2d 73 (1999), upon which Reichenbach relies, this court recognized that the Washington State Constitution, article I, section 7, provides greater protection for automobile passengers than is guaranteed by the Fourth Amendment. The court also reiterated that constitutional protections are possessed individually under article I, section 7 of the state constitution. Thus, in the context of an automobile search, Parker held that the rights of a passenger are independent from those of a driver. Id. at 498, 987 P.2d 73. The defendants in those consolidated cases were charged with possession of controlled substances. Id. at 489-92, 987 P.2d 73. In each case, the police officers seized controlled substances while searching the passengers' purse or jacket as a part of a search incident to arrest of a driver. Id. The defendants moved to suppress evidence of the drugs. Id. This court held that the arrest of the driver, without more, does not provide the authority to search a nonarrested passenger. Id. at 497-98, 518, 987 P.2d 73. Additionally, the court held that the search of a nonarrested passenger is not justified where officers lack articulable suspicion that he or she is armed or dangerous and there is no evidence to independently connect the passenger to illegal activity. Id. at 497-98, 502-03, 987 P.2d 73. The State argues that Parker is inapposite because here, unlike in Parker, the drugs were not found incident to a search of a passenger or a search of items belonging to a passenger. Rather, the State argues, the methamphetamine was seized in the course of a consensual search of Seaman's vehicle.
Although it is true that Seaman consented to the vehicle search, the question here is whether police would have discovered the drugs pursuant to that consent if Reichenbach had not abandoned the baggie. As the State correctly observes, law enforcement officers may retrieve and search voluntarily abandoned property without implicating an individual's rights under article I, section 7. State v. Reynolds, 144 Wash.2d 282, 287, 27 P.3d 200 (2001). However, property is deemed to be involuntarily abandoned and thus cannot be seized absent a warrant or an exception to the warrant requirement if the defendant shows (1) unlawful police conduct and (2) a causal nexus between the unlawful conduct and the abandonment. Id. at 288, 27 P.3d 200. As this court observed, this rule is consistent with the principle that evidence obtained as a result of an unlawful seizure is inadmissible. Id. at 288, 27 P.3d 200. Thus, even though Seaman consented to the search, if the items were involuntarily abandoned by a nonarrested passenger, the police may not lawfully seize those items.
Reichenbach claims that he was unlawfully seized when the police officers stopped Seaman's car and ordered him to raise his hands at gunpoint. When analyzing whether a seizure has occurred, the essential inquiry is whether, under the circumstances, a reasonable person would believe he or she is not free to leave. State v. Mendez, 137 Wash.2d 208, 222, 970 P.2d 722 (1999); State v. Nettles, 70 Wash.App. 706, 709, 855 P.2d 699 (1993); State v. Whitaker, 58 Wash.App. 851, 853, 795 P.2d 182 (1990). An objective test is used to determine whether a person is *87 in a custodial arrest. State v. Lorenz, 152 Wash.2d 22, 36-37, 93 P.3d 133 (2004). In other words, the test is whether a reasonable detainee under these circumstances would consider himself or herself under a custodial arrest. See id. A reasonable detainee, if ordered to raise his or her hands at gunpoint, would consider himself or herself under a custodial arrest. There is no doubt that Reichenbach was seized. The next question, then, is whether the seizure was lawful. Since Reichenbach's seizure was not based on probable cause or on a warrant, as the trial court pointed out,[2] we turn to the question of whether Seaman's consent justified Reichenbach's seizure.
Relying on Parker, we conclude that Seaman's consent to search did not encompass consent to seize Reichenbach. As in Parker, the officers needed an independent basis to justify Reichenbach's seizure. Here, as in Parker, no probable cause existed for the custodial arrest. See State v. Graham, 130 Wash.2d 711, 724, 927 P.2d 227 (1996) (probable cause required for a custodial arrest). We conclude that the seizure of Reichenbach was unlawful.
We next turn to the question of the causal nexus between the unlawful police seizure and the abandonment. Abandonment occurs if the circumstances show that the defendant has voluntarily relinquished his reasonable expectation of privacy in discarding the property. Reynolds, 144 Wash.2d at 288, 27 P.3d 200; State v. Dugas, 109 Wash.App. 592, 595-96, 36 P.3d 577 (2001) (adopting rule from Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). As Seaman testified, Reichenbach possessed the baggie immediately before the police officers stopped Seaman's car. The police officers found the baggie near the left side of the passenger seat on the floor.[3] The only logical explanation is that Reichenbach dropped the baggie near the left side of his seat when he dropped his left hand at the time the police ordered him to raise his hands at gunpoint. Indeed, that was the State's theory at trial. We conclude that the baggie was abandoned in response to the unlawful seizure of Reichenbach's person. Accordingly, the baggie of methamphetamine was involuntarily abandoned and the police officers seized the baggie in violation of article I, section 7 of the state constitution.
Because the methamphetamine was illegally seized and there was no tactical reason for failing to move to suppress, counsel's deficient performance was clearly prejudicial. Reichenbach's conviction for possession of methamphetamine was dependant on the baggie that was seized. Without that evidence, the State could not prove possession beyond a reasonable doubt. Reichenbach's right to the effective assistance of counsel was violated.

CONCLUSION
We hold that police officers illegally seized the baggie of methamphetamine and that Reichenbach received ineffective assistance of counsel because his counsel did not move to suppress the methamphetamine. We reverse the Court of Appeals and remand for further proceedings consistent with this opinion.
NOTES
[1] Reichenbach contends that Seaman's consent was not valid under either the Washington State Constitution, article I, section 7, or the Fourth Amendment to the United States Constitution. He does not argue, however, for a different analysis under the state constitution. Where this court has already determined in a particular context the appropriate state constitutional analysis under a provision of the Washington State Constitution, no Gunwall analysis (State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986)) is necessary. See State v. White, 135 Wash.2d 761, 769, 958 P.2d 982 (1998). In such circumstances, the court will apply the already determined independent state constitutional analysis in deciding whether a state constitutional violation has occurred, provided the issue is otherwise properly raised. However, if there has been no prior determination of an appropriate independent state constitutional analysis in a particular context, and no argument is made that a different analysis applies under the state constitution than applies under the federal constitution, then we will apply the federal analysis. See State v. O'Neill, 148 Wash.2d 564, 582, 62 P.3d 489 (2003) (applying federal constitutional "plain view" analysis where the issue was whether an unlawful search of an automobile had occurred and no argument was made that the state constitutional analysis differs from the federal analysis).
[2] Neither party challenges the trial court's ruling.
[3] At the trial, Buettner testified:

Q. Now, does this picture [of Seaman's car] accurately represent where that baggie was found on March 1st of 2001?
A. As far as I'm aware. The narcotic's dog had made a hit, and Deputy Wyckoff had removed the tire, and had found the baggie and had picked it up and shown me the baggie. Verbatim Report of Proceedings at 122 (Sept. 10, 2001).
Q. And what is that a photograph of?
A. Again, that's the baggie containing the crystalline substance.
Q. All right. And that's in the area immediately behind the passenger seat?
A. Correct. On the  it would have been the left side of the passenger seat as if there was somebody in the seat.
Id. at 123.