239 P.3d 1114 (2010)
STATE of Washington, Respondent,
v.
Kevin R. BOWEN, Appellant.
No. 39096-5-II.
Court of Appeals of Washington, Division 2.
September 21, 2010.
*1116 Thomas Edward Doyle, Attorney at Law, Hansville, WA, for Appellant.
Edward P. Lombardo, Mason County Prosecuting Attorney's Offi., Shelton, WA, for Respondent.
PENOYAR, C.J., WORSWICK, and ARMSTRONG, JJ.
WORSWICK, J.
¶ 1 Kevin R. Bowen appeals his convictions for unlawful possession of a controlled substance, methamphetamine, and first degree unlawful possession of a firearm. He argues that the trial court violated his public trial right and that the evidence was insufficient to support his convictions. Pro se, he further argues that he received ineffective assistance of counsel because defense counsel did not file a motion to suppress the firearm evidence. We hold that sufficient evidence supports his convictions. We further hold that the trial court violated his right to a public trial, and we reverse and remand for a new trial.

FACTS
¶ 2 On June 12, 2008, Deputy Ted Drogmund, while on routine patrol in Mason County, stopped a black truck and a white truck for trespassing. Bowen, who was driving the black truck, exited it after it stopped. Bowen attempted to enter it again, and Deputy Drogmund ordered him to stop several times.
¶ 3 Deputy Drogmund detained Bowen in handcuffs due to safety concerns arising from his behavior. Deputy Drogmund and responding Officer Steve Valley ordered the white truck's occupants, two juveniles, to leave it and to sit with Bowen "kind of near the two trucks." II Report of Proceedings (RP) at 33, 61. Deputy Drogmund read the three their Miranda[1] warnings and advised them that he was detaining them for criminal trespass, but he did not handcuff the juveniles.
¶ 4 Officer Valley, a Department of Corrections (DOC) specialist working with Deputy Drogmund at the time, acquired Bowen's name and birth date, contacted a DOC field office, and discovered that Bowen was under DOC supervision and that his presence in Mason County violated his probation. Deputy Drogmund confirmed Bowen as the black truck's registered owner. Based on this, Officer Valley searched the black truck with Deputy Drogmund's assistance. During this search, behind the driver's seat Officer Valley discovered a spoon and scale containing white residue that later tested positive for methamphetamine.
¶ 5 Deputy Drogmund searched the black truck incident to Bowen's arrest. He discovered a nylon bag containing an unloaded, operable firearm between the driver and passenger seats.
¶ 6 The State charged Bowen with unlawful possession of a controlled substance, methamphetamine, and first degree unlawful possession of a firearm. A jury heard the matter.
¶ 7 During jury selection, the trial court asked, "Does either party have an objection to allowing jurors to take up sensitive issues, sensitive questions, in chambers if they feel that that would be beneficial to them?" Partial RP at 1. Both the prosecuting attorney and defense counsel stated they had no objections.[2] *1117 Defense counsel further requested that the trial court generally question jury pool members whether strong feelings about firearms or drugs would make them impartial in Bowen's case. Then, the trial court stated, "[A]re there any members of the public that would object to our taking up questions in the privacy of chambers? The record should reflect that there is nobody present in the courtroom to object and there are no objections being noted." RP at 2.
¶ 8 In response to the trial court's general questions, some jurors indicated that they knew Bowen, the witnesses, counsel, or friends or relatives with experience with similar cases or incidents, or that they felt strongly about firearms or drugs and these things potentially biased them in Bowen's case. The trial court then explained to the jury pool that it would question these members in chambers for "a number of different reasons," such as avoiding tainting the jury pool with bias. RP at 5.
¶ 9 During in-chambers voir dire, the trial court judge asked all the questions and only asked the attorneys whether they wanted to inquire further or object to excusal of jurors. The trial court excused six jury pool members who continued to indicate bias or impartiality. Defense counsel used a for-cause challenge to excuse one member for bias.
¶ 10 At trial, Kathleen Fultz testified that she owned the firearm discovered in the black truck. She said that she purchased it from Brian Downs, that she stored it in a black nylon holster with a Velcro strap, that she lost the loaded firearm in the black truck "a day or two before" Bowen's arrest. II RP at 105, 107-110. Downs testified that he never sold a firearm to Fultz. Deputy Drogmund testified that the unloaded firearm he discovered in the black truck was inside a container, not a holster.
¶ 11 Regarding the firearm, the trial court instructed the jury that "constructive possession occurs when ... such dominion and control may be immediately exercised." No one objected to this instruction. Clerk's Papers (CP) at 41.
¶ 12 The jury convicted Bowen of both charges. He appeals.

ANALYSIS

SUFFICIENCY OF THE EVIDENCE
¶ 13 Bowen first contends that insufficient evidence supports his convictions for unlawful possession of a controlled substance and unlawful possession of a firearm. The State counters that Bowen, as the sole driver and occupant of the black truck, constructively possessed the controlled substance and firearm.
¶ 14 Evidence sufficiently supports a conviction when, viewed in the light most favorable to the State, it permits any rational fact finder to find the essential elements of a crime beyond a reasonable doubt. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). An insufficiency claim admits the truth of the State's evidence. Salinas, 119 Wash.2d at 201, 829 P.2d 1068. We draw all reasonable inferences from the evidence in favor of the State and interpret them most strongly against the defendant. State v. Brown, 162 Wash.2d 422, 428, 173 P.3d 245 (2007). We consider circumstantial evidence and direct evidence equally reliable. State v. Delmarter, 94 Wash.2d 634, 638, 618 P.2d 99 (1980). And we defer to the fact finder on issues of conflicting testimony, credibility of witnesses, and persuasiveness of the evidence. State v. Thomas, 150 Wash.2d 821, 874-75, 83 P.3d 970 (2004).
¶ 15 To establish constructive possession, the State had to show that Bowen had dominion and control over the controlled substance and the firearm. See State v. Callahan, 77 Wash.2d 27, 29, 459 P.2d 400 (1969). The State need not show exclusive control, but it must show more than mere proximity. State v. George, 146 Wash.App. 906, 920, 193 P.3d 693 (2008). An individual's sole occupancy and possession of a vehicle's keys sufficiently supports a finding that the defendant had dominion and control over the vehicle's contents. State v. Potts, 1 Wash. App. 614, 617, 464 P.2d 742 (1969).
*1118 ¶ 16 Regarding the firearm, the trial court instructed the jury that "constructive possession occurs when ... such dominion and control may be immediately exercised" without objection. CP at 41. Thus, this element became part of the law of the case. State v. Hickman, 135 Wash.2d 97, 101-02, 954 P.2d 900 (1998). But this instruction does not mean that the defendant had to immediately exercise dominion and control at the time police discovered the firearm. State v. Summers, 107 Wash.App. 373, 389 n. 9, 28 P.3d 780 (2001).
¶ 17 Here, the evidence established Bowen's dominion and control over the contraband and firearm because he was the owner, driver, and sole occupant of the black truck. Deputy Drogmund discovered the firearm in nothing more than a nylon bag beside the driver's seat. The jury resolved the conflicting testimony of the firearm's ownership and the reason for its presence in the truck against Bowen. His argument fails.

PUBLIC TRIAL RIGHT
¶ 18 Bowen next contends that the United States Supreme Court's recent decision addressing the public trial right, Presley v. Georgia, ___ U.S. ___, 130 S.Ct. 721, ___ L.Ed.2d ___ (2010), requires reversal here because the trial court did not consider reasonable alternatives to closure before conducting portions of voir dire in chambers.[3] He further argues that under Washington law, conducting portions of voir dire in chambers without the trial court's application of the Bone-Club guidelines violated his public trial right resulting in structural error. State v. Bone-Club, 128 Wash.2d 254, 906 P.2d 325 (1995). He also contends that he received ineffective assistance of counsel because defense counsel did not object to the in-chambers portions of voir dire. We agree that the trial court did not conduct the required analysis prior to closing the courtroom and further find that Bowen did not waive his article I, section 22 right to a public trial.
¶ 19 In Presley, the trial court closed the courtroom for voir dire. 130 S.Ct. at 722. The defendant objected to the closure at trial. Presley, 130 S.Ct. at 722. On appeal, he challenged the closure under the Sixth Amendment. Presley, 130 S.Ct. at 723. The Supreme Court granted certiorari on the question of whether "`the opponent of closure must suggest alternatives to closure'" or whether the proponent of closure "`must show that there is no available less-intrusive alternative.'" Presley, 130 S.Ct. at 727 (Thomas, J., dissenting) (quoting Pet. for Cert. at 18). The Court rejected Georgia's Supreme Court conclusion that "trial courts need not consider alternatives to closure absent an opposing party's proffer of some alternatives." Presley, 130 S.Ct. at 724.
¶ 20 Thus, Presley addressed circumstances where a party opposed the closure at trial. That case does not control circumstances where, as here, the defendant did not object to the closure at trial but seeks to use the closure on appeal to reverse his conviction. Although a defendant need not object to a closure in order to raise the issue on appeal, the failure to do so raises issues not before the Supreme Court in Presley. See State v. Momah, 167 Wash.2d 140, 154-55, 217 P.3d 321 (2009). Therefore, we address the public trial right under applicable Washington law.[4]
¶ 21 Whether a violation of the public trial right exists is a question of law we review de novo. Momah, 167 Wash.2d at 147, 217 P.3d 321. A criminal defendant has a right to a public trial under the state constitution. CONST. art. I, § 22. The public trial right applies during voir dire. Momah, 167 Wash.2d at 148, 217 P.3d 321. But this right is not absolute, and a trial court may close the courtroom under certain circumstances. Momah, 167 Wash.2d at 148, 217 P.3d 321; State v. Strode, 167 Wash.2d 222, 226, 217 P.3d 310 (2009) (citing State v. Easterling, 157 Wash.2d 167, 174-75, 137 P.3d 825 (2006)).
*1119 ¶ 22 To protect the public trial right and determine whether circumstances warrant a closure, Washington courts must apply the Bone-Club guidelines[5] and make specific findings on the record justifying a closure. Momah, 167 Wash.2d at 148-49, 217 P.3d 321. But not all violations of the public trial right result in structural error requiring a new trial. Momah, 167 Wash.2d at 149-50, 217 P.3d 321. Furthermore, we must harmonize the public trial right with the right to an impartial jury and construe these rights in light of a criminal proceeding's central goal of trying defendants fairly. Momah, 167 Wash.2d at 152-53, 217 P.3d 321. Accordingly, a defendant may make tactical choices to advance his own interests in a fair trial. Momah, 167 Wash.2d at 153, 217 P.3d 321.
¶ 23 We resolve this case on the issue of Bowen's right to a public trial, not the public's right to the same. We analyze Bowen's public trial rights under Momah and Strode, two decisions the Washington State Supreme Court issued the same day.
¶ 24 In Momah, the trial court closed the courtroom by conducting portions of voir dire in chambers without following the Bone-Club guidelines. Momah, 167 Wash.2d at 146, 151, 217 P.3d 321. Before conducting voir dire, the trial court and counsel discussed the possibility of television crews viewing jury selection. Strode, 167 Wash.2d at 233, 217 P.3d 310 (Fairhurst, J., concurring).[6] During this discussion, a prosecuting attorney noted that Washington case law required open and public jury selection; the trial court agreed, adding that court rules presumed that all court proceedings are open. Strode, 167 Wash.2d at 233, 217 P.3d 310 (Fairhurst, J., concurring).
¶ 25 Furthermore, before voir dire began the trial court and counsel held "considerable" discussions about avoiding jury pool contamination due to the highly publicized nature of the case. Momah, 167 Wash.2d at 145-46, 217 P.3d 321; Strode, 167 Wash.2d at 232, 217 P.3d 310 (Fairhurst, J., concurring). Defense counsel suggested individual questioning of jurors. Strode, 167 Wash.2d at 232, 217 P.3d 310 (Fairhurst, J., concurring). Based on jurors' responses to a juror questionnaire, the trial court and counsel discussed a list of jurors selected for individual questioning. Momah, 167 Wash.2d at 145-46, 217 P.3d 321. The trial court and counsel discussed various locations for the individual questioning, and the jury pool's size and room availability played a part in choosing a location. Strode, 167 Wash.2d at 232, 217 P.3d 310 (Fairhurst, J., concurring). Defense counsel agreed to private voir dire and argued for its expansion by requesting that the court individually question all jury pool members. Momah, 167 Wash.2d at 146, 217 P.3d 321. Once in-chambers voir dire began, defense counsel actively participated in voir dire. Momah, 167 Wash.2d at 146-47, 217 P.3d 321.
*1120 ¶ 26 Our Supreme Court observed that previous public trial right cases contained no record that the trial court considered the defendant's right to a public trial before closing the courtroom. Momah, 167 Wash.2d at 151, 217 P.3d 321. It thus concluded that Momah was distinguishable from those previous cases because the trial court recognized and balanced the defendant's right to a public trial and right to an impartial jury under article I, section 22. Momah, 167 Wash.2d at 151-52, 156, 217 P.3d 321; see also Strode, 167 Wash.2d at 233, 217 P.3d 310 (Fairhurst, J., concurring) (the record in Momah showed that the parties and the trial court knew that all proceedings were presumptively open and public).
¶ 27 Furthermore, our Supreme Court observed that the defendant affirmatively assented to, participated in, argued for the expansion of, and benefitted from the in-chambers voir dire, which led to the removal of biased and partial jurors from the jury pool. Momah, 167 Wash.2d at 155, 217 P.3d 321. The court concluded that the record indicated deliberate, tactical choices made by the defendant in order to protect his right to an impartial jury. Momah, 167 Wash.2d at 155-56, 217 P.3d 321; see also Strode, 167 Wash.2d at 234, 217 P.3d 310 (Fairhurst, J., concurring) (the record in Momah showed a knowing and intelligent waiver by the defendant of his public trial right). Thus, it held that the closure did not result in structural error. Momah, 167 Wash.2d at 156, 217 P.3d 321. In contrast, the record in Strode contained no indication that the trial court held a Bone-Club hearing, considered the defendant's right to a public trial, or balanced this right with competing interests before closing the courtroom. Strode, 167 Wash.2d at 224, 217 P.3d 310 (plurality opinion); 235, 217 P.3d 310 (Fairhurst, J., concurring).
¶ 28 We conclude that the circumstances in this case are more similar to those in Strode than those in Momah. Here, the trial court, not defense counsel, proposed individual in-chambers voir dire of jury pool members. Likewise, defense counsel did not actively participate in the in-chambers voir dire; the trial court judge asked all the questions and only asked the attorneys whether they wanted to inquire further or objected to the excusal of jurors. Furthermore, the record does not indicate circumstances requiring individual questioning of jurors in chambers, as opposed to another public location. Finally, although the record shows that the trial court considered Bowen's right to an impartial jury, it contains no indication that either it or the parties considered his right to a public trial or explained that right to him. See Momah, 167 Wash.2d at 152, 217 P.3d 321 (defendant's right to impartial jury and right to public trial are distinct from each other). Therefore, we cannot conclude that the trial court adequately safeguarded his public trial right or that he made deliberate, tactical choices precluding him from relief. Accordingly, we hold that this closure constituted structural error. We reverse his conviction and remand for a new trial.[7]
¶ 29 Reversed and remand for a new trial.
We concur: ARMSTRONG, J., and PENOYAR, C.J.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Bowen did not personally address the court on this issue.
[3] After the parties submitted their initial briefs, the United States Supreme Court issued Presley. We called for supplemental briefing on that case.
[4] But see State v. Paumier, 155 Wash.App. 673, 230 P.3d 212 (2010).
[5] These guidelines are:

"1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a "serious and imminent threat" to that right.
"2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.
"3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.
"4. The court must weigh the competing interests of the proponent of closure and the public.
"5. The order must be no broader in its application or duration than necessary to serve its purpose."
Bone-Club, 128 Wash.2d at 258-59, 906 P.2d 325 (quoting Allied Daily Newspapers v. Eikenberry, 121 Wash.2d 205, 210-11, 848 P.2d 1258 (1993)).
[6] In Momah, our Supreme Court rejected the defendant's public trial right arguments that in-chambers voir dire of some jurors required reversal of his conviction and remand for a new trial. Momah, 167 Wash.2d at 156, 217 P.3d 321. In Strode, a plurality of the court reversed another defendant's conviction on the same in-chambers voir dire issue. 167 Wash.2d at 231, 217 P.3d 310. In Strode's concurring opinion, two justices of the court agreed with the plurality opinion result on different grounds. Strode, 167 Wash.2d at 236, 217 P.3d 310. In doing so, it identified additional facts in Momah that distinguished that case from Strode. Strode, 167 Wash.2d at 232-34, 217 P.3d 310 (Fairhurst, J., concurring). Thus, we cite to Strode for these facts in our discussion of Momah.
[7] Because we reverse and remand, we do not reach Bowen's ineffective assistance of counsel claims.