# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 60418-3-II |
| Respondent, | |
| v. | |
| HERBERT DUPREE ZENO, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Following a bench trial, Herbert D. Zeno appeals his conviction for first degree unlawful possession of a firearm. Zeno argues that insufficient evidence supports his unlawful possession of a firearm conviction; specifically, that the State failed to prove he possessed the gun. Zeno also argues that he received ineffective assistance of counsel because defense counsel failed to move to suppress evidence of the gun found in the car Zeno had been driving.

Regarding Zeno's claim of insufficient evidence, substantial evidence in the record shows that Zeno possessed the gun; therefore, sufficient evidence supports his conviction. Regarding Zeno's claim of ineffective assistance of counsel, Zeno cannot demonstrate that a motion to suppress would likely have been granted; therefore, he cannot show prejudice and his claim of ineffective assistance fails. Accordingly, we affirm.

FACTS

A.   BACKGROUND

On the evening of January 25, 2023, off-duty Vancouver Police Officer Sean Donaldson was driving home. While driving, he saw a vehicle perpendicular in the roadway that appeared to have been involved in a crash. Officer Donaldson activated his emergency lights and pulled aside to the vehicle to render assistance.

Once parked, Officer Donaldson observed tire tracks that went over the sidewalk and through the grass leading to a downed wooden utility pole. The tire tracks then continued past the utility pole, back across the sidewalk, and ended at the vehicle.

Officer Donaldson saw a man, Zeno, standing outside the driver's door of the vehicle. When asked, Zeno provided Officer Donaldson with his name, birth date, and address verbally, but Zeno did not have his license. Zeno stated that the vehicle was his girlfriend's car. Zeno informed Officer Donaldson that he lost control of the vehicle, crashed over the sidewalk, into the utility pole, and ended up back on the street.

Officer Donaldson noticed Zeno stumbling as he walked, that his speech was slurred, and he had bloodshot eyes. Officer Donaldson also noticed a strong smell of alcohol coming from Zeno, along with a faint odor of marijuana. Officer Donaldson suspected that Zeno was intoxicated.

Zeno was cooperative with Officer Donaldson. Officer Donaldson asked Zeno if he had consumed any alcohol or drugs that day, to which Zeno replied that he had "one or two beers" "hours ago" and that he had smoked marijuana a couple hours before the crash. Verbatim Rep. of Proc. (VRP) at 107. Zeno then agreed to perform three field sobriety tests. Zeno exhibited

2

impairment for the first test and was unable to perform the remaining two tests. At that time, Officer Donaldson had developed probable cause for Zeno driving under the influence (DUI) and placed Zeno under arrest. After checking Zeno's information through dispatch, Officer Donaldson learned that Zeno had an unrelated outstanding warrant for his arrest and was prohibited from possessing firearms. Officer Donaldson did not advise Zeno of his *Miranda*[1] rights.

After Zeno was placed under arrest, Officer Donaldson asked Zeno if there was anything inside the vehicle he wanted. Zeno requested Officer Donaldson to retrieve his wallet and cellphone from the vehicle.[2] Zeno did not specify where in the vehicle Officer Donaldson could find those items. While looking in the car, Officer Donaldson noticed a strong odor of marijuana and observed an unopened bottle of vodka on the floorboard. There was a blue jacket sitting on the driver's seat that Officer Donaldson lifted in his search for Zeno's cellphone and wallet. Immediately upon lifting the jacket, Officer Donaldson felt the outline of "a revolver style handgun" in the jacket pocket. VRP at 113.

Officer Donaldson set the jacket back onto the driver's seat, at which point he could see the gun through the mesh knitting of the jacket pocket. Officer Donaldson took a photo of the jacket and backed out of the vehicle. He then sealed the vehicle with evidence tape, intending to apply for a search warrant. Officer Donaldson transferred custody of Zeno to Officer Eric McCaleb to finish the DUI investigation. The vehicle was then towed to the police precinct.

---

[1] *See generally Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] At a CrR 3.5 hearing, the trial court ruled that Zeno's statements made to Officer Donaldson were not made in response to a custodial interrogation and were admissible. Zeno does not challenge the trial court's CrR 3.5 ruling on appeal.

On January 28, Officer Donaldson executed a search warrant on the vehicle. In addition to the unopened bottle of vodka that Officer Donaldson had previously seen, there was an open, half empty bottle of vodka on the back passenger floorboard. In one of the cup holders next to the driver's seat, there was a red Solo cup containing a clear liquid that smelled strongly of alcohol. Between the front passenger seat and center console, Officer Donaldson found a leather gun holster. The glove box contained a "trigger mechanism for a semiautomatic-type handgun." VRP at 117. Officer Donaldson then removed the gun, a Taurus .38 caliber revolver, from inside the pocket of the jacket that had been on the driver's seat. The revolver was fully functional. It held five cartridges, two of which had been fired, with three bullets remaining.

B.    PROCEDURAL HISTORY

In an amended information, the State charged Zeno with first degree unlawful possession of a firearm (Count 1), driving while under the influence (Count 2), ignition interlock violation (Count 3), and driving with a suspended license (Count 4). Zeno pleaded guilty to Count 3 and Count 4 before trial.

The parties proceeded to a bench trial on the unlawful possession of a firearm and DUI charges. During the trial, Officer Donaldson and Officer McCaleb, among others, testified to the facts described above.

As it pertained to Zeno's unlawful possession of a firearm charge, the primary dispute between the parties was the extent to which Zeno possessed the gun.[3] The State argued that based on the gun's location inside the jacket, which was sitting on the driver's seat, Zeno either had to

---

[3] Prior to trial, Zeno stipulated that he had previously been convicted of a serious offense.

4

have been wearing the jacket and took it off following the accident, or he had to have been sitting on top of the jacket. Either way, the State asserted, Zeno would have known the gun was there and he was therefore in possession of it. The State also asserted that Zeno had constructive possession of the gun because it was not on his person when Officer Donaldson arrived at the scene.

In response, defense counsel argued that the State could not prove the charges beyond a reasonable doubt. Defense counsel contended the State did not present evidence that Zeno knew there was a gun in the car, that he was aware of the car's contents, or that he had handled any of those contents. Defense counsel also argued that it made little sense that Zeno would request Officer Donaldson to retrieve his cellphone and wallet from the vehicle had he known the gun was present.[4] Rather, defense counsel argued, the gun was not actually visible until Officer Donaldson first moved the jacket.

The trial court found Zeno guilty of both charges and entered written findings of fact (FOF) and conclusions of law (COL). In its FOFs, the trial court wrote, in pertinent part:

3.      The defendant told Officer Donaldson he had been driving the vehicle, had lost control, drove off the road, and hit the utility pole. He told Officer Donaldson the [vehicle] was not his. As Officer Donaldson spoke to the defendant, he noticed he was stumbling slightly and slurred his speech. He also noticed that the defendant's eyes were bloodshot and watery. The defendant told Officer Donaldson that he had 1-2 beers about an hour or two earlier and had also smoked a cannabis (marijuana) joint during the same timeframe. As they spoke[,] Officer Donaldson smelled a strong odor of alcohol and a faint odor of cannabis coming from the defendant.

4.      The defendant agreed to perform three field sobriety tests: the horizontal gaze nystagmus [(HGN)], the walk and turn, and the one leg raise. He

---

[4] The parties did not argue that Zeno was too intoxicated to make decisions or answer Officer Donaldson's questions.

showed signs of impairment during the HGN test and had significant difficulty performing the other two tests. Officer Donaldson placed the defendant under arrest for driving while under the influence.

5.       The defendant asked Officer Donaldson to retrieve his wallet and cell phone from his car. Officer Donaldson agreed to do so. While doing so he noticed a strong odor of cannabis in the [vehicle]. He also saw an unopened bottle of vodka in the [vehicle]. As he searched for the defendant's wallet and cell phone, he moved a blue jacket that was sitting on the driver's seat to the passenger's seat. When he did so he noticed the outline of a pistol in the jacket. Officer Donaldson backed out of the [vehicle] at this point, sealed the vehicle, and had it transported [to] VPD West Precinct in preparation for applying for a search warrant. Officer Donaldson later turned custody of the defendant over to VPD Officer Eric McCaleb.

. . . .

8.       On January 28, 2023, Officer Donaldson executed a search warrant on the [vehicle]. In addition to the unopened bottle of vodka he saw earlier[,] he found an open bottle of vodka and a red Solo cup which smelled of alcohol in a drink holder. He also found the trigger assembly for a pistol in the glove box, a leather holster between the front passenger seat and the center console, a magazine for a semi-automatic handgun, and a Taurus .38 caliber revolver in the blue jacket.

. . . .

12.      Concerning the unlawful possession of a firearm charge, the revolver was in a jacket lying on the driver's seat of the vehicle the defendant was driving when he ran over a telephone pole. Either the defendant had to be sitting on the revolver at the time of the accident, or he moved it onto the driver's seat after the collision. If he was sitting on the revolver, he would have had notice of what it was and was, at the least, in constructive possession. If he moved the revolver onto the driver's seat he was in actual possession of the revolver. In either case he was in possession of the revolver. The court also considers the presence of the trigger assembly, magazine, and holster found in the [vehicle] on the issue of the defendant's knowledge of the presence of the revolver.

Clerk's Papers (CP) at 124-26.

In COL 1, the trial court concluded: "The defendant is guilty beyond a reasonable doubt of unlawful possession of a firearm in the first degree as charged in count one of the amended information." CP at 127.

Zeno appeals.

ANALYSIS

On appeal, Zeno challenges his conviction for first degree unlawful possession of a firearm.[5] Zeno argues the State presented insufficient evidence that he unlawfully possessed the gun. Zeno also argues that he received ineffective assistance of counsel when defense counsel failed to move to suppress evidence of the gun based on Officer Donaldson's allegedly illegal search of the vehicle.

A.     SUFFICIENCY OF THE EVIDENCE

1.     Legal Principles

In challenges to sufficiency of the evidence, courts consider whether, "'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Roberts*, 5 Wn.3d 222, 231, 572 P.3d 1191 (2025) (emphasis in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319,

---

[5] Zeno assigns error to the trial court's COL 2, which was the trial court's conclusion regarding the DUI conviction. However, other than the reference to COL 2, Zeno's briefing does not challenge his DUI conviction, nor does Zeno advance any arguments regarding his DUI conviction. Further, the State interpreted Zeno's briefing as challenging the trial court's COL 1. Thus, given the complete lack of any argument addressing COL 2 and the fact that Zeno's briefing focused solely on a challenge to the unlawful possession of a firearm conviction, this opinion presumes Zeno's assignment of error to COL 2 was a typographical error and that he intended to challenge COL 1, which is the trial court's conclusion regarding the unlawful possession of a firearm conviction.

99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). "'A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.'" *State v. Zghair*, 4 Wn.3d 610, 620, 567 P.3d 1 (2025) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). Circumstantial and direct evidence are considered equally reliable. *State v. Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017).

Following a bench trial, a trial court must enter written findings of fact and conclusions of law. *Roberts*, 5 Wn.3d at 234; CrR 6.1(d). Unchallenged findings of fact are verities on appeal. *State v. A.M.*, 163 Wn. App. 414, 419, 260 P.3d 229 (2011), *review denied*, 175 Wn.2d 1009 (2012). "Findings must address all ultimate facts and material issues that carry influence or are essential to the conclusions. Ultimate facts are the essential and determinative facts supporting a conclusion; they must support the conclusions of law." *Roberts*, 5 Wn.3d at 234 (citation omitted). Appellate courts review challenges to a trial court's conclusions de novo. *Id.* at 237. Finally, "[w]e defer to the trier of fact for purposes of resolving conflicting testimony and persuasiveness of the evidence." *Id.*

A person is guilty of unlawful possession of a firearm in the first degree if "the person owns, accesses, has in the person's custody, control, or possession, or receives any firearm after having previously been convicted . . . in this state or elsewhere of any serious offense." RCW 9.41.040(1)(a)(i). Possession may be actual or constructive. *State v. Manion*, 173 Wn. App. 610, 634, 295 P.3d 270 (2013), *review denied*, 180 Wn.2d 1027 (2014).

"The State may establish constructive possession by showing the defendant had dominion and control over the firearm." *State v. Chouinard*, 169 Wn. App. 895, 899, 282 P.3d 117 (2012), *review denied*, 176 Wn.2d 1003 (2013). Proximity alone is insufficient to establish constructive

possession. *State v. Bowen*, 157 Wn. App. 821, 828, 239 P.3d 1114 (2010). Rather, "the ability to reduce an object to actual possession is an aspect of dominion and control." *State v. Turner*, 103 Wn. App. 515, 521, 13 P.3d 234 (2000); *accord State v. Echeverria*, 85 Wn. App. 777, 783, 934 P.2d 1214 (1997) (stating "a rational trier of fact could find [the defendant] possessed or controlled the gun that was within his reach"). "An individual's sole occupancy and possession of a vehicle's keys sufficiently supports a finding that the defendant had dominion and control over the vehicle's contents." *Bowen*, 157 Wn. App. at 828; *see also Chouinard*, 169 Wn. App. at 899-900 ("Courts have found sufficient evidence of constructive possession, and dominion and control, in cases in which the defendant was either the owner of the premises or the driver/owner of the vehicle where contraband was found.").

2.     Sufficient Evidence Supports Zeno's Possession of a Firearm

Zeno challenges the trial court's FOF 12 and argues that he did not possess the gun because "the [S]tate did not provide any evidence that he had dominion and control over it." Br. of Appellant at 34. Specifically, Zeno contends he did not own the vehicle he drove, the firearm was not in plain view, there was no evidence the jacket belonged to him, and ultimately the trial court speculated about facts when the evidence showed only Zeno's mere proximity. We disagree.

The record shows that Zeno was driving his girlfriend's vehicle, lost control, and crashed into a utility pole. Zeno admitted he was the driver and sole occupant of the vehicle. After Officer Donaldson placed Zeno under arrest for driving under the influence, Zeno asked Officer Donaldson to retrieve his cellphone and wallet from the vehicle.

In looking for Zeno's cellphone and wallet, Officer Donaldson lifted a jacket from the driver's seat. Immediately, Officer Donaldson felt the outline of a revolver. Officer Donaldson

stopped, exited the car, and applied for a search warrant. Upon executing the search warrant, Officer Donaldson discovered a "Taurus .38 caliber revolver" in the jacket pocket. CP at 125. Here, when viewing the evidence and all reasonable inferences in favor of the State, sufficient evidence shows beyond a reasonable doubt that Zeno had dominion and control of the vehicle and the jacket that held the gun. *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019), *cert. denied*, 589 U.S. 1148 (2020).

Although Zeno does not challenge FOFs 3, 4, 5, and 8, the evidence recited above supports those findings. Unchallenged findings are verities on appeal. *A.M.*, 163 Wn. App. at 419. Thus, because Zeno was the driver and sole occupant of the vehicle, and in construing the facts in a light most favorable to the State, a reasonable inference arises that Zeno had dominion and control over the contents of the vehicle, including the jacket that was on the driver's seat where Zeno admitted he had been sitting. *Zghair*, 4 Wn.3d at 620; *Bowen*, 157 Wn. App. at 827-28. The fact that Zeno did not own the vehicle is not dispositive of the issue of dominion and control. *See Turner*, 103 Wn. App. at 521.

Moreover, the jacket, with the gun in the pocket, was lying on the driver's seat when Officer Donaldson found it. As discussed above, Officer Donaldson immediately discerned the gun upon lifting the jacket. Because the jacket was lying on the driver's seat, where Zeno admitted he had been sitting, Zeno had to have been (1) sitting on the jacket; (2) wearing the jacket, removed it, and placed it on the driver's seat; or (3) simply placed the jacket on the driver's seat following the accident. Regardless of the scenario, when the evidence is viewed in a light most favorable to the State, a reasonable inference arises that Zeno *knew* the gun was in the jacket pocket, supporting

the trial court's finding in FOF 12 regarding Zeno's "knowledge of the presence of the revolver." CP at 126.

Also, in each reasonable scenario outlined above, Zeno would have had the ability to reduce the gun to actual possession. *Echeverria*, 85 Wn. App. at 783. Thus, the evidence in the record, when viewed in the light most favorable to the State, supports the trial court's FOF 12 that Zeno possessed the gun. And the trial court's findings support its COL 1 that Zeno is guilty beyond a reasonable doubt of unlawful possession of a firearm in the first degree. *Roberts*, 5 Wn.3d at 231.

Substantial evidence in the record supports the trial court's FOF 12 that Zeno had dominion and control over the gun and that Zeno, either actually or constructively, possessed the gun. This finding, along with FOFs 3, 4, 5, and 8, support the trial court's COL 1 that Zeno was guilty of unlawful possession of a firearm in the first degree. Therefore, we hold sufficient evidence supports Zeno's conviction for unlawful possession of a firearm.

B.      FAILURE TO RAISE MOTION TO SUPPRESS

1.      Legal Principles

a.      Ineffective assistance of counsel

Criminal defendants have a constitutional right to effective assistance of counsel. *State v. Vazquez*, 198 Wn.2d 239, 247, 494 P.3d 424 (2021); U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. To succeed on a claim of ineffective assistance of counsel, a defendant must show "(1) defense counsel's representation was deficient, . . . and (2) defense counsel's deficient representation prejudiced the defendant." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Courts strongly presume that counsel was effective. *Vazquez*, 198 Wn.2d at 247.

Counsel's performance is deficient if there is no legitimate or tactical reason for counsel's conduct. *Id.* at 248. Counsel's conduct is prejudicial if "'there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *McFarland*, 127 Wn.2d at 335). "If either element of the test is not satisfied, the inquiry ends." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

When a defendant alleges ineffective assistance based on counsel's failure to seek suppression, "the defendant must establish that a motion to suppress likely would have been granted." *State v. Walters*, 162 Wn. App. 74, 81, 255 P.3d 835 (2011). If the record shows that the trial court would have denied the motion to suppress, then there has been no prejudice. *State v. Scabbyrobe*, 16 Wn. App. 2d 870, 874, 482 P.3d 301, *review denied*, 197 Wn.2d 1024 (2021). "Not every possible motion to suppress has to be made." *State v. Nichols*, 161 Wn.2d 1, 14, 162 P.3d 1122 (2007). Moreover, "[c]ounsel may legitimately decline to move for suppression on a particular ground if the motion is unfounded." *Id.*[6]

---

[6] "Where a motion to suppress is not made, appellate courts must examine the trial record to determine if a motion to suppress likely would have been granted." *Scabbyrobe*, 16 Wn. App. 2d at 874 n.1. In some cases, the record may not be sufficiently developed for appellate courts to determine whether a motion to suppress would likely have been granted because trial courts often focus on different facts and issues than those arising in a motion to suppress. *McFarland*, 127 Wn.2d at 334 n.2; *Scabbyrobe*, 16 Wn. App. 2d at 874 n.1; *accord State v. D.E.D.*, 200 Wn. App. 484, 490-91, 402 P.3d 851 (2017) ("Because there was no motion to suppress, the State had no obligation or interest in developing the factual basis for the detention."). Where the record is insufficient to fairly adjudge the matter, "ineffective assistance claims are rejected on the basis that the defendant cannot establish that he or she was prejudiced by counsel's failure to bring a suppression motion." *Scabbyrobe*, 16 Wn. App. 2d at 874 n.1. In such cases, the remedy is for the appellant to file a personal restraint petition. *Id.*

Here, even though no motion to suppress was raised at the trial court, the record is sufficient to determine Zeno's claim of ineffective assistance. The discovery of the gun, and the circumstances leading to the discovery of the gun, were a primary focus at trial. Had Zeno's

b.      Article I, § 7

Article I, section 7 of the Washington Constitution provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." *See also State v. Bowman*, 198 Wn.2d 609, 617, 498 P.3d 478 (2021). Article I, section 7's protections are "'broader than the Fourth Amendment's reasonable expectation of privacy.'" *Bowman*, 198 Wn.2d at 617 (quoting *State v. Hinton*, 179 Wn.2d 862, 868, 319 P.3d 9 (2014)).

Courts employ a two-part inquiry to determine if there has been a violation of article I, section 7. *Id.* at 618. Courts assess "(1) whether the government intruded on a private affair and, if so, (2) whether the governmental conduct was justified by authority of law." *Id.* An individual's private affair may include a vehicle and its contents. *State v. Kennedy*, 107 Wn.2d 1, 4, 726 P.2d 445 (1986); *see generally Hinton*, 179 Wn.2d at 868 ("Under article I, section 7, a search occurs when the government disturbs 'those privacy interests which citizens of this state *have held, and should be entitled to hold*, safe from governmental trespass absent a warrant.'" (emphasis in original) (quoting *State v. Myrick*, 102 Wn.2d 506, 511, 688 P.2d 151 (1984))).

Generally, warrantless searches are per se unreasonable. *State v. Reichenbach*, 153 Wn.2d 126, 131, 101 P.3d 80 (2004). However, "'there are a few jealously and carefully drawn exceptions to the warrant requirement, including consent.'" *Bowman*, 198 Wn.2d at 618 (internal quotation marks omitted) (quoting *Reichenbach*, 153 Wn.2d at 131). To show that the consent exception

---

counsel raised a motion to suppress, the purported basis of the motion, according to Zeno, would have been that the gun was discovered based on an illegal search. Thus, because the record contains details about the nature of Officer Donaldson's search of the car, we proceed with reviewing Zeno's claim.

applies, the State must show (1) "consent to search is voluntary," (2) "the consenting party has authority to consent," and (3) "the search does not exceed the scope of the consent." *Id.* at 619.

Whether consent is voluntary depends on the totality of the circumstances, "including (1) whether *Miranda* warnings were given prior to obtaining consent, (2) the degree of education and intelligence of the consenting person, and (3) whether the consenting person was advised of his right not to consent." *Reichenbach*, 153 Wn.2d at 132. Courts may also weigh "any express or implied claims of police authority to search, previous illegal actions of the police, the defendant's cooperation, and police deception as to identity or purpose." *Id.* Further, express or implied limitations may limit the scope of the consent, and a consensual search may not exceed that scope. *Id.* at 133. If evidence has been obtained in violation of article I, section 7, it may be excluded. *State v. D.E.D.*, 200 Wn. App. 484, 491, 402 P.3d 851 (2017).

2.      Zeno Cannot Establish Prejudice

Zeno alleges that his counsel had no legitimate or tactical reason for failing to move for suppression of the gun. He asserts that Officer Donaldson's warrantless search of the jacket was illegal and does not fall within either a search incident to arrest or within the consent exception. We disagree.

To prevail on his ineffective assistance of counsel claim, Zeno must demonstrate "that a motion to suppress likely would have been granted." *Walters*, 162 Wn. App. at 81. Thus, we must determine if Officer Donaldson's search of the vehicle prior to the search warrant constituted an illegal search.

Here, the record shows that after Zeno performed the field sobriety tests, Officer Donaldson had already developed probable cause for a DUI charge and placed Zeno under arrest. The record

also shows that Zeno had been cooperative throughout his interaction with Officer Donaldson and followed Officer Donaldson's instructions. Indeed, the parties did not argue that Zeno was too impaired to make decisions or understand what was happening.

Following the arrest, in response to Officer Donaldson's question as to whether Zeno wanted anything from inside the vehicle, Zeno asked Officer Donaldson to retrieve his cellphone and wallet from the vehicle. Thus, Zeno gave Officer Donaldson permission to enter the vehicle to look for his cellphone and wallet. This was not a search incident to arrest. *State v. MacDicken*, 179 Wn.2d 936, 940-41, 319 P.3d 31 (2014).[7] Of note, Officer Donaldson merely asked Zeno if he wanted anything from inside the vehicle; Officer Donaldson did not request to search the vehicle. And the record suggests that Officer Donaldson would not have looked in the vehicle at that time but for Zeno's request that Officer Donaldson retrieve his cellphone and wallet from the vehicle. Therefore, to the extent there has been a government intrusion into Zeno's private affairs (i.e., a search), the record shows that Zeno consented by requesting Officer Donalson retrieve his cellphone and wallet from the vehicle. *Kennedy*, 107 Wn.2d at 4; *Bowman*, 198 Wn.2d at 619.

Zeno argues that the consent exception does not apply because his consent was not voluntary and Officer Donaldson's "exploratory search" exceeded the scope of Zeno's request. Br. of Appellant at 19. Whether consent is voluntary depends on the totality of the circumstances. *Reichenbach*, 153 Wn.2d at 132. Even though Zeno had not been provided *Miranda* warnings or specifically notified that he had a right to not consent, there is no evidence in the record to suggest

---

[7] "A warrantless search of the arrestee's person is considered a reasonable search as part of the arrest of the person. Such a search presumes exigencies and is justified as part of the arrest; therefore it is not necessary to determine whether there are officer safety or evidence preservation concerns in that particular situation." *MacDicken*, 179 Wn.2d at 940-41 (citation omitted).

that he is not an individual of ordinary intelligence or that he was at all coerced or pressured into requesting the retrieval of his phone and wallet from the vehicle. *Id.*

Furthermore, the record shows that Zeno did not limit the scope of his request. Zeno argues that "he did not authorize the officer to grab and search the jacket, by weighing it and pressing the material to discern the shape of a gun." Br. of Appellant at 20. However, when Zeno asked Officer Donaldson to retrieve his cellphone and wallet from the vehicle, Zeno did not specify where his cellphone and wallet could be located in the vehicle. Officer Donaldson looked in the vehicle from the driver's side where Zeno had been seated and lifted a jacket sitting on the driver's seat. It is entirely reasonable to look for an individual's cellphone and wallet underneath a jacket or in a jacket pocket, which are common places those items might be, especially if that jacket is on top of the seat where the individual had just been sitting.

Contrary to Zeno's assertion, there is no evidence in the record to suggest that Officer Donaldson "search[ed] the jacket, by weighing it and pressing the material to discern the shape of a gun." Br. of Appellant at 20. Upon lifting the jacket, Officer Donaldson immediately felt the outline of a gun in the pocket. He did not open the pocket; instead, he put the jacket back down on the seat, sealed the car, and applied for a search warrant. Thus, because Zeno voluntarily requested that Officer Donaldson retrieve his cellphone and wallet, because Zeno did not limit the scope of his request by telling Officer Donaldson where in the vehicle to look, and because Zeno was not so impaired as to lack decision-making ability, to the extent there was a search, the consent exception applies to Officer Donaldson's alleged warrantless search of the vehicle. *Bowman*, 198 Wn.2d at 619.

Because the consent exception would apply had there been a search, there is no article I, section 7 violation.[8] *Id.* Zeno cannot demonstrate "that a motion to suppress likely would have been granted." *Walters*, 162 Wn. App. at 81. And because Zeno cannot show that a motion to suppress likely would have been granted, it follows that Zeno cannot establish prejudice in his claim of ineffective assistance of counsel. *Scabbyrobe*, 16 Wn. App. 2d at 874. In the absence of any showing of prejudice, Zeno's claim of ineffective assistance fails. *Kyllo*, 166 Wn.2d at 862.

CONCLUSION

We affirm Zeno's conviction for first degree unlawful possession of a firearm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Glasgow, J.

Veljacic, A.C.J.

---

[8] The State also argues that the "plain view" exception applies to these circumstances. "'[P]lain view' applies to a situation where an officer inadvertently sees an item immediately recognizable as contraband, after legitimately entering an area with respect to which a suspect has a legitimate expectation of privacy." *Kennedy*, 107 Wn.2d at 9. Because we hold the consent exception applies, we do not address whether the gun was in "plain view."