# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  46328-8-II |
| Respondent, | |
| v. | |
| LARRY DEAN WEATHERMAN, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — A jury found Larry Weatherman guilty of six counts of first degree

incest[1] and also found that the state had proved two aggravating factors: domestic violence with

an ongoing pattern of abuse,[2] and abuse of a position of trust.  He appeals his convictions and

sentence, arguing (1) the trial court denied him a fair trial when it excluded evidence that N.W.

was previously abused by her stepbrother and did not disclose any report of abuse by

Weatherman during the course of that investigation; (2) his trial counsel was ineffective; and (3)

the trial court erred when it sentenced him to an exceptional sentence.  Weatherman also raises

several issues in his statement of additional grounds (SAG).  We hold that Weatherman was

afforded a fair trial, that his counsel was not ineffective, and that his sentence was not improper.

Accordingly, we affirm.

---

[1] RCW 9A.64.020(1)(a).

[2] RCW 9.94A.535(3)(h)(i).

FACTS

I. BACKGROUND FACTS

N.W. had no contact with her biological father, Larry Weatherman, until 1996 when she was 11 years old. When N.W. was 12 years old she began having overnight and weekend visits with Weatherman at his home.

N.W. testified at trial that on Halloween night in 1997 Weatherman touched her vagina under her Snow White costume while the two of them were in Weatherman's van. According to N.W. this act began a pattern of sexual abuse over the next seven years that escalated from initial fondling, to digital penetration, to oral sex, to penile penetration. N.W. testified that during her high school years Weatherman had some form of sexual contact with her nearly every night.

N.W. also testified that when Weatherman's wife, Syndee,[3] moved out of the home for several months, Weatherman forced N.W. to take on Syndee's role as wife. This involved making Weatherman's breakfast, packing his lunch for work, making dinner, sharing his bed, and taking baths and showers together. N.W. testified that throughout the abuse Weatherman would frequently ask her, "You love your Dad, right?" Verbatim Report of Proceedings (VRP) at 133. N.W. testified that when she attempted to leave, Weatherman made her feel guilty by making comments such as "[w]ell, you don't love me anymore. You don't love me and I'm just going to shoot myself with 100 units of insulin." VRP at 152. N.W. moved out of Weatherman's house in 2004. N.W. disclosed the abuse in 2011.

---

[3] We refer to Syndee Weatherman by her first name so as to avoid confusion. No disrespect is intended.

II. PROCEDURAL FACTS

The State charged Weatherman with six counts of first degree incest for incidents that occurred between July 27, 2002, and September 4, 2005. Each count contained a domestic violence designation and notified Weatherman that the State would be seeking an exceptional sentence based on two aggravating circumstances: (1) the defendant used his or her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offense, RCW 9.94A.535(3)(n); and (2) the crime was a domestic violence offense and was part of an ongoing pattern of psychological, physical, or sexual abuse of a victim or multiple victims manifested by multiple incidents over a prolonged period of time. RCW 9.94A.535(3)(h)(i).

Before trial, the parties presented motions in limine. The State moved to exclude evidence of prior allegations of sexual abuse by others against N.W. Weatherman opposed the motion arguing that he planned to introduce evidence going to N.W.'s credibility based on her failure to disclose any sexual abuse by Weatherman despite the opportunity to do so during an investigation into sexual abuse by N.W.'s stepbrother.[4] Weatherman's offer of proof was that in the course of his investigation, Officer Prather would have asked if anyone else was sexually abusing her, and that his report showed no notes of other abuse at that time. The trial court granted the State's motion, ruling that the proffered evidence was barred by the rape shield statute and was irrelevant. However, the trial court explicitly left open the possibility for Weatherman to argue at trial that N.W. had the opportunity to disclose and did not.

During jury deliberations, the jury sent the court five questions, the first of which is germane to this case. The jury asked, "If we find one count unanimous do all additional counts

_____

[4] N.W.'s stepbrother pleaded guilty to a crime involving N.W. in 2000.

have to be unanimous?" Clerk's Papers (CP) at 132. In discussing this question with the parties the court commented as follows:

> [JUDGE]: . . .The first question is, if we find five count—if we find one count unanimous, do all additional counts have to be unanimous? And the answer to that is yes. And, it's whether you want me to tell them yes or whether you want me to refer to the instructions they've been given.

VRP at 457. The parties agreed that their preference was for the judge to respond, "Refer to the instructions." VRP at 457.

The jury returned guilty verdicts for each incest count, along with special verdicts that (1) defendant and N.W. were "members of the same family or household," (2) defendant committed the offenses using a "position of trust to facilitate the commission of the crime[s]," and (3) the crimes were "part of an ongoing pattern of psychological, physical, or sexual abuse of the victim . . . manifested by multiple incidents over a prolonged period of time." CP at 135. Weatherman's counsel requested that the jury be polled to confirm the jurors understood that they needed to be unanimous for six separate and distinct incidents. The court conducted polling and counsel was satisfied.

The court sentenced Weatherman to 100 months on each count within a standard range of 77 to 103 months on each count. But based on the aggravating factors, the trial court ordered three counts to run consecutively and three counts to run concurrently, for a total of 300 months.

Weatherman appeals his convictions and sentence.

4

## ANALYSIS

### I. RIGHT TO A FAIR TRIAL

Weatherman argues that the trial court violated his right to a fair trial when it excluded evidence that N.W. did not report any abuse by Weatherman during a previous sexual abuse investigation into N.W.'s stepbrother. We disagree.

Weatherman sought to introduce evidence of the prior sexual abuse investigation involving N.W.'s stepbrother for the purpose of attacking N.W.'s credibility by showing that N.W. had the opportunity to disclose abuse by Weatherman but did not. Weatherman argues that the trial court erred by excluding this evidence as irrelevant and prohibited by the rape shield statute. He argues that the exclusion of this evidence violated his constitutional right to present relevant evidence. We hold that the trial court erred because the rape shield statute does not apply to incest cases, and we assume without deciding that the excluded evidence was relevant. Nonetheless, we hold that excluding this evidence was harmless error.

Both the federal and state constitutions protect the right to a fair trial, to confront the State's witnesses, and to present a defense. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010). "'A defendant in a criminal case has a constitutional right to present a defense consisting of relevant evidence that is not otherwise inadmissible.'" *State v. Cuthbert*, 154 Wn. App. 318, 336, 225 P.3d 407 (2010) (quoting *State v. Rehak*, 67 Wn. App. 157, 162, 834 P.2d 651 (1992)). Where a jury's decision to believe or not believe a single witness is particularly important to the outcome of the case, the witness's credibility "'must be subject to close scrutiny.'" *State v. Perez-Valdez*, 172 Wn.2d 808, 822, 265 P.3d 853 (2011) (quoting *State v. Roberts*, 25 Wn. App. 830, 834, 611 P.2d 1297 (1980)).

Nonetheless, the admission or refusal of evidence lies largely within the sound discretion of the trial court; its decision will not be reversed on appeal absent an abuse of discretion. *State v. Atsbeha*, 142 Wn.2d 904, 913-14, 16 P.3d 626 (2001). There is abuse of discretion when the trial court's decision is manifestly unreasonable or based on untenable grounds or reasons, such as the misconstruction of a rule. *State v. Gunderson*, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014).

A.      *Evidentiary Issues*

Weatherman argues, and the State concedes, that the trial court erred when it ruled that evidence showing N.W. did not disclose Weatherman's abuse during an investigation into sexual abuse by her stepbrother was not admissible under RCW 9A.44.020, the rape shield statute. We agree.

Washington's rape shield statute excludes evidence of a sexual assault victim's past sexual behavior on the issue of consent and limits such evidence's use to prove the victim's consent. RCW 9A.44.020(1), (3). The rape shield law should not be used to exclude evidence that an alleged child victim had previously been abused. *State v. Kilgore*, 107 Wn. App. 160, 177, 26 P.3d 308 (2001), *aff'd*, 147 Wn.2d 288, 53 P.3d 974 (2002). This rule is based, in part, on the fact that children are incapable of consenting to a sex act, therefore admission of prior sexual abuse is not prejudicial to the victims nor does it tend to discourage prosecution. *See State v. Carver*, 37 Wn. App. 122, 124, 678 P.2d 842 (1984). Instead, courts should use "general evidentiary principles" and balance the probative value of the past sex abuse evidence against its possible prejudice. *Kilgore*, 107 Wn. App. at 177. Consent is never an issue in incest. RCW 9A.64.020. Thus, the trial court erred in applying the rape shield statute to exclude evidence that

N.W. was previously sexually abused by her stepbrother and did not disclose Weatherman's abuse at that time.

The State argues that even though the trial court erred in excluding the evidence under the rape shield law, exclusion of the evidence can be sustained because it was irrelevant. We assume without deciding that the evidence was relevant as to N.W.'s credibility.

B. *Exclusion of the Evidence Was Harmless*

Weatherman asserts that his constitutional right to a fair trial was infringed by the trial court's error. It is well established that constitutional errors, may be so insignificant as to be harmless. *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). A constitutional error is harmless if we are convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error. *State v. Fuller*, 169 Wn. App 797, 813, 282 P.3d 126 (2012). We are so convinced.

Here, Officer Prather would have testified that it would have been his practice, during his investigation of N.W.'s stepbrother, to ask N.W. if anyone else was sexually abusing her, and that his report showed no notes of any other abuse. Weatherman sought to introduce this evidence to attack N.W.'s credibility on the grounds that she did not disclose the abuse by her father despite having the opportunity to do so.

The trial court did not exclude all evidence of N.W.'s nondisclosure, rather it excluded specific evidence that N.W. did not disclose during a sexual abuse investigation involving N.W's stepbrother. After hearing Weatherman's offer of proof on the evidence, the trial court granted the State's motion to exclude evidence of her being sexually abused by her stepbrother, but made it clear that Weatherman would be able to explore N.W.'s failure to disclose:

[COUNSEL]: So—so Your Honor, so what—are you specifically precluding that she failed to assert allegations about my client when she had an opportunity to do so?

. . . .

[JUDGE]: The Defense still has the ability to argue that because clearly the report didn't happen. I mean, we know the date that the actual report happened. Whether she had opportunities to, you can ask on—you know, did you walk by a phone on this date? Did you know how to dial 911?

. . . .

[COUNSEL]: So where I'm . . . left at is the potential retraction and I can argue, based upon the way the evidence comes out, that she had the opportunity to disclose and perhaps obviously didn't, but not actually bring that out—

[JUDGE]: Right.

[COUNSEL]:—through the officer. Okay. Okay.

VRP at 74, 76-77.

It is undisputed that N.W. did not disclose any sexual abuse by Weatherman while it was happening. The jury was aware that the charges were not brought until several years after the abuse ended. Weatherman retained the ability to cross-examine N.W. as to why she waited so long to disclose the abuse but chose not to.

Furthermore, Weatherman was able to, and in fact did, call witnesses and offer evidence attacking N.W.'s credibility. Melissa Porter testified that N.W. told Porter that she had lied about Weatherman sexually abusing her.

The admitted evidence showed that N.W. did not disclose the abuse by Weatherman until several years after the fact, and Weatherman presented testimony calling N.W.'s credibility into question. Moreover, the proffered testimony was weak—Officer Prather would have testified that it "would be his normal course of events; he would have asked," and that his report showed no reports of other sexual abuse, thereby implying that N.W. made no disclosure at the time. VRP at 57-58. We are convinced beyond a reasonable doubt that any reasonable jury would

8

have reached the same result, even if it had heard Officer Prather's testimony. Any error by the trial court in excluding this evidence was harmless.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Weatherman argues that his trial counsel rendered ineffective assistance by failing to ask the trial court to answer "yes" to a question asked by the jury after it began its deliberation. We disagree.

To show ineffective assistance of counsel, a defendant must show (1) that defense counsel's conduct was deficient and (2) that the deficient performance resulted in prejudice. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004); *see also Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To show deficient performance, Weatherman must show that defense counsel's performance fell below an objective standard of reasonableness. *Reichenbach*, 153 Wn.2d at 130. To show prejudice, Weatherman must show a reasonable possibility that, but for counsel's purportedly deficient conduct, the outcome of the proceeding would have differed. 153 Wn.2d at 130. If Weatherman fails to establish either prong of the ineffective assistance of counsel test, we need not inquire further. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007). Because ineffective assistance of counsel claims present mixed questions of law and fact, we review them de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

"The threshold for the deficient performance prong is high, given the deference afforded to decisions of defense counsel in the course of representation." *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). To prevail on an ineffective assistance claim, a defendant must overcome a strong presumption that counsel's performance was reasonable. 171 Wn.2d at 33.

9

Weatherman cannot demonstrate deficient performance. He argues that counsel's performance was deficient because no reasonable attorney would *not* request the court to instruct the jury that the answer to its question was "yes" as opposed to referring the jury to the written instructions. However, he does not argue that the original jury instruction was improper in any way. We agree with the State's argument that "[i]t is hard to believe that an attorney conducts himself in a manner that falls below an objective standard of reasonableness when he requests that the jury refer to proper instructions on the law." Br. of Resp't 19.

Weatherman cannot demonstrate that his counsel's performance was deficient. His claim of ineffective assistance of counsel fails.

### III. EXCEPTIONAL SENTENCE

Weatherman argues that the trial court improperly based his exceptional sentence in part on an aggravating factor that he committed the offenses upon a family or household member, which is already inherent in the crime of incest. We disagree.

An exceptional sentence is not justified by mere reference to the very facts that constituted the elements of the offense proven at trial. *State v. Ferguson*, 142 Wn.2d 631, 648, 15 P.3d 1271 (2001). In determining whether a factor legally supports departure from the standard sentencing range set by the Sentencing Reform Act,[5] we employ a two-part test: (1) the trial court may not base an exceptional sentence on factors the Legislature necessarily considered in establishing the standard sentencing range, and (2) the aggravating factor must be sufficiently substantial and compelling to distinguish the crime in question from others in the same category. *State v. Jennings*, 106 Wn. App. 532, 555, 24 P.3d 430 (2001).

---

[5] Ch. 9.94A RCW.

The trial court sentenced Weatherman to an exceptional sentence of 300 months based on the following two aggravating factors: (1) the defendant used his or her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offense, RCW 9.94A.535(3)(n); and (2) the offense involved domestic violence as defined in RCW 10.99.020 and the offense was part of an ongoing pattern of psychological, physical, or sexual abuse of a victim or multiple victims manifested by multiple incidents over a prolonged period of time. RCW 9.94A.535(3)(h)(i). Weatherman argues that because the relationship contemplated by RCW 9.94A.535(3)(h)(i) is inherent in the crime of incest, the trial court erred in relying on the "ongoing pattern" aggravating factor in imposing an exceptional sentence. Br. of Appellant 23. His argument misunderstands the ongoing pattern aggravating factor.

The finding that defendant and victim were family or household members is not itself an aggravating factor or circumstance as Weatherman suggests. Rather, the existence of that relationship is a predicate finding in order to consider the ongoing pattern of abuse over a prolonged period of time according to RCW 9.94A.535(3)(h)(i). A defendant could be found guilty of incest without necessarily being found to have abused his victim over a prolonged period of time, and thus would not be subject to the aggravating factor. This fact is further illustrated by the jury instructions:

In relevant part, the trial court instructed the jury as follows:

INSTRUCTION No. 9[6]
To convict the defendant of the crime of incest in the first degree, as charged in count 1, each of the following elements of the crime must be proved beyond a reasonable doubt:

---

[6] Identical jury instructions for each count of incest charged follow in jury instructions 10-14.

(1) That between July 27, 2002 and September 4, 2005, on an occasion separate and distinct from that in counts 2, 3, 4, 5, and 6, the defendant engaged in sexual intercourse with [N.W.];

(2) That [N.W.] was related to the defendant as a descendant;

(3) That at the time the defendant knew the person with whom he was having sexual intercourse was so related to him; and

(4) That any of these acts occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

INSTRUCTION No. 15

The State alleges that the defendant committed acts of Incest in the First Degree on multiple occasions. To convict the defendant on any count of Incest in the First Degree, *one particular act* of Incest in the First Degree as to each count must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You need not unanimously agree that the defendant committed all the acts of Incest in the First Degree.

INSTRUCTION No. 17

An "ongoing pattern of abuse" means *multiple incidents of abuse over a prolonged period of time*. The term "prolonged period of time" means more than a few weeks.

CP at 118-126 (emphasis added).

Read together, jury instructions 9 and 15 direct the jury that in order to convict Weatherman on count one, they must unanimously agree on the act in which all of the noted elements of first degree incest occurred. Thus, a *single and separate act* of the noted conduct was all that is required for a conviction for first degree incest. The elements to convict are different than the requirements of the "ongoing pattern" aggravating factor which requires *multiple incidents* of abuse of the same victim over a prolonged period of time. Stated another way, that a perpetrator engages in an "ongoing pattern of abuse" with a victim is not a factor the Legislature necessarily considered in establishing the standard sentencing range for the crime of

incest. Accordingly, Weatherman's argument that this factor cannot support his exceptional sentence fails.

## STATEMENT OF ADDITIONAL GROUNDS

In his SAG, Weatherman raises several additional issues to challenge his conviction. A SAG must adequately inform the court of the nature and occurrence of alleged errors. *State v. Calvin*, 176 Wn. App. 1, 26, 316 P.3d 496 (2013). We consider only arguments that we have not already adequately addressed as raised by the defendant's appellate counsel. *State v. Thompson*, 169 Wn. App. 436, 493, 290 P.3d 996 (2012), *review denied*, 176 Wn.2d 1023 (2013). We do not review matters outside the record on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995). Issues involving facts outside of the record are properly raised in a personal restraint petition, rather than a SAG. *Calvin*, 176 Wn. App. at 26. And we are "not obligated to search the record in support of claims made in a [SAG]." RAP 10.10(c).

### I. INEFFECTIVE ASSISTANCE OF COUNSEL

Weatherman claims that he received ineffective assistance of counsel in violation of the Sixth Amendment. We disagree.

First, Weatherman claims that defense counsel "lost [his] train of thought . . . in front of the jury." SAG at 9. Weatherman supplies no explanation for this claim; he does not say, and the record does not show, when defense counsel lost his train of thought in front of the jury. This is an issue involving facts outside of the record, therefore we do not consider it.

Second, Weatherman claims that defense counsel failed to respond to the State's motions and objections. Weatherman claims defense counsel "accepted what the Judge and State wanted without much argument or fight." SAG at 9. Weatherman supplies no explanation for this

claim. He does not say when defense counsel failed to "put up a fight." On the contrary, the record shows that defense counsel was consistently engaged in motions in limine, objecting at trial, and in preparing jury instructions. Because Weatherman fails to adequately inform us of the nature and occurrence of alleged errors, we do not consider this issue.

Third, Weatherman claims that defense counsel failed to conduct redirect examination following cross-examination of Weatherman, his wife, and one other witness. If defense counsel's conduct can be characterized as reasonable, legitimate trial strategy or tactics, a claim of ineffective assistance fails. *Grier*, 171 Wn.2d at 33-34. The decision not to call a witness falls within the province of tactical decisions by defense counsel. *In re Pers. Restraint of Cross*, 180 Wn. 2d 664, 700, 327 P.3d 660 (2014). It stands to reason that if a decision to call a witness is a legitimate tactic, the decision to refrain from cross-examining a witness is also a legitimate tactic. Weatherman fails to show it was an unreasonable tactical decision for defense counsel not to conduct redirect examination. We reject his claim.

## II. INSUFFICIENT EVIDENCE

Weatherman appears to claim that insufficient evidence supports his incest conviction. He argues that "[t]he State proved nothing beyond a reasonable doubt . . . . No evidence was provided to back up the counts only her testimony was offered." SAG at 2.

In evaluating the sufficiency of the evidence, we review the evidence and all reasonable inferences that can be drawn from it in the light most favorable to the State. *State v. Drum*, 168 Wn.2d 23, 34, 225 P.3d 237 (2010). We ask whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. 168 Wn.2d at 34-35. Circumstantial and direct evidence are equally reliable, and this court defers to the trier of fact on

conflicting testimony, witness credibility, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). "[A] credible victim's testimony can be sufficient to prove that a sex crime occurred." *Saldivar v. Momah*, 145 Wn. App. 365, 405, 186 P.3d 1117, 1138 (2008). *See also* RCW 9A.44.020(1) ("to convict a person of any [sex offense] it shall not be necessary that the testimony of the alleged victim be corroborated").

N.W. testified to the systematic sexual abuse she endured at the hands of her father, Weatherman, over the course of several years. While it is true that the case against Weatherman turned on N.W.'s credibility, and that there was conflicting evidence regarding Weatherman's guilt, we view the evidence in the light most favorable to the State. That Weatherman's conviction turned on disputed testimony and witness credibility does not show that the evidence was insufficient; it shows that Weatherman's guilt was a factual question the jury resolved against him. The evidence was sufficient to support finding Weatherman guilty of six counts of incest. We reject his claim.

### III. IMPROPER USE OF RAPE SHIELD

Weatherman appears to claim that the trial court erred by improperly applying the rape shield to his case and as a result he was unable to introduce evidence showing N.W. has accused multiple people of abusing her. To the extent the trial court's application of the rape shield prevented Weatherman from offering evidence involving N.W.'s sexual abuse by her stepbrother, this issue was raised in his direct appeal and is fully and adequately addressed above. To the extent Weatherman attempts to raise an issue involving facts outside of the record, we do not consider it.

IV. PROSECUTORIAL MISCONDUCT

Weatherman makes two claims of prosecutorial misconduct. First, he claims that the "prosecutor crossed boundaries set in place by the State and courtroom." SAG at 5. Prosecutorial misconduct is grounds for reversal if the prosecuting attorney's conduct was both improper and prejudicial. *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (plurality opinion). If the defendant did not object at trial, the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. *State v. Emery*, 174 Wn.2d 741, 761, 278 P.3d 653 (2012). Weatherman provides no explanation for this claim. Because Weatherman does not say how the prosecutor crossed boundaries or when, we do not consider this issue.

Second, Weatherman appears to claim that the prosecutor committed misconduct by leading the witness during his examination of N.W., particularly by showing her pictures of his penis. "The accuser was told the picture was of me and then prosecutor presented picture to accuser and asked if the picture was of my genitals, she said it was after being directed." SAG at 7-8. Weatherman did not object to this line of questioning during trial. Additionally, the trial court has broad discretion to permit leading questions. *Stevens v. Gordon*, 118 Wn. App. 43, 55, 74 P.3d 653 (2003). Because Weatherman did not object, he has to show that the prosecutor's examination on this issue is so flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been cured by a jury instruction. *Emery*, 174 Wn.2d at 761. He fails to make this showing. Weatherman's prosecutorial misconduct claims fail.

V. JUDICIAL BIAS

Weatherman claims that the trial judge was biased against him. We disagree.

16

The party who argues that a judge has a bias must support the claim with evidence. *State v. Post*, 118 Wn.2d 596, 619, 826 P.2d 172, 837 P.3d 599 (1992); *State v. Carter*, 77 Wn. App. 8, 11-12, 888 P.2d 1230 (1995). The defendant must show such evidence of a judge's actual or potential bias before we will apply the appearance of fairness doctrine. *Post*, 118 Wn.2d at 619 n. 9; *Carter*, 77 Wn. App. at 11-12.

Here, Weatherman does not provide any factual allegations as to the judge's alleged bias. Rather, Weatherman's allegations of bias are based on his sweeping statement that "[t]he judge granted the State every request it made and denied everything the Defense requested." SAG at 2-3. This statement is neither accurate nor satisfactory proof of the judge's actual or potential bias. Thus, we reject his claim.

## VI. EXCESSIVE BAIL

Weatherman appears to claim that the court excessively set bail at $50,000. He claims that he "put out" so much money bailing out, he wasn't able to afford a "real lawyer" and this affected his right to a fair trial. SAG at 11. The amount of bail is "a matter within court discretion to be reversed on appeal only for manifest abuse." *State v. Reese*, 15 Wn. App. 619, 620, 550 P.2d 1179 (1976). Weatherman stood accused of six counts of first degree incest. Weatherman fails to demonstrate that the trial court's setting of bail at $50,000 was manifest abuse. We reject his claim.

## VII. JUDGE AND JUROR MISCONDUCT

Weatherman claims that during trial two jurors and the judge were nodding off. There is nothing in the record to suggest either instance of misconduct. We do not address Weatherman's argument, as it is more properly addressed in a personal restraint petition.

17

No. 46328-8-II

## VIII. MATTERS OF CREDIBILITY AND WEIGHT

Weatherman raises several grounds that relate to witness credibility and weight of the evidence.[7] The persuasiveness, credibility, and weight of the evidence are matters for the trier of fact and are not subject to our review. *See State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). Thus, Weatherman's assertions do not support reversal of his conviction.

We affirm Weatherman's convictions and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Johanson, C.J.

Melnick, J.

---

[7] These include claims that (i) portions of N.W.'s factual testimony were incorrect, (ii) N.W. accused other family members of sexual abuse in the past, (iii) N.W. engaged in sexual activity with other men, (iv) N.W. wanted to ruin Weatherman and Syndee's marriage, (v) N.W. told Porter she lied, (vi) Justin Weatherman's memory issues were limited to his hospital stays, (vii) N.W. knew distinguishing characteristics of Weatherman's penis because either she had watched his homemade sex video or N.W.'s mother told N.W. about his penis, (viii) N.W.'s mother collaborated with N.W. to ruin Weatherman's life, and (ix) Weatherman had no prior sexual offenses.

18